```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION

TERRY WHITE,                         :
                                     :
     Plaintiff,                      :
                                     :
vs.                                  :
                                     :    CIVIL ACTION 14-0341-M
CAROLYN W. COLVIN,                   :
Social Security Commissioner,        :
                                     :
     Defendant.                      :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 21). Oral argument was waived in this action (Doc. 19). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, White was forty-eight years old, had completed an eleventh-grade special education (Tr. 35, 54) and had previous work experience as a construction worker (Doc. 13).  Plaintiff alleges disability due to depression, hypertension, mental retardation, lumbar degenerative disc disease, prostatic hypertrophy, post-fracture left leg, poor hearing in left ear, weakness in the left hand, obesity, pain disorder, and somatoform disorder (Doc. 13).

The Plaintiff applied for SSI and disability benefits on July 6 and 13, 2011, respectively, asserting a disability onset date of December 24, 2008 (Tr. 173-85; *see also* Tr. 24).  An Administrative Law Judge (ALJ) denied benefits, determining that although White could not now perform his past relevant work, there were specific light-work jobs that he could do (Tr. 24-39).  Plaintiff requested review of the hearing decision (Tr. 15-20), but the Appeals Council denied it (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, White alleges that:  (1) He meets the requirements of Listing 12.05C; (2) the ALJ's residual functional capacity (hereinafter *RFC*) evaluation is flawed because it does not take into consideration the combination of his impairments; (3) the ALJ failed to complete a Psychiatric Review Technique Form (hereinafter *PRTF*) in his analysis; and (4) the ALJ relied on mistaken testimony from the vocational expert (hereinafter *VE*) (Doc. 14).  Defendant has responded to—and denies—these claims (Doc. 15).  A summary of the relevant record evidence follows.

On June 19, 2005, White was admitted to UAB Hospital following his involvement, as a pedestrian, in a motor vehicle accident; he was admitted with third-degree burns of the left lateral thigh and leg and fourth and fifth right fingers (Tr. 258-66).  Plaintiff was discharged on July 12 following pin placement in his left femur, skin grafts, and wound, physical, and occupational therapy; he was stable, but restricted from heavy lifting and strenuous exercise.

Six years later, on August 22, 2011, Dr. Stephen J. Robidoux, a Family Practitioner, examined Plaintiff who stated that he had worked through 2008 at which time he was laid off (Tr. 268-72).  The Doctor noted that he was an alert, obese—but very muscular—man, in no distress; Plaintiff exhibited normal

3

heel and toe, unaided gait and was able to squat and rise. After providing range of motion (hereinafter *ROM*) measurements for White's neck, back, and all extremities, Dr. Robidoux diagnosed hypertension and found as follows: "He related a vague history of back, arm and ear problem that has not required medical evaluation of treatment. . . . I find no limitations for his age to sitting, standing, walking, lifting, carrying, climbing, bending, stooping, crawling, handling objects, using hand and foot controls or travel" (Tr. 271).

On August 30, 2011, Psychologist Nina E. Tocci provided a mental evaluation at the request of the Social Security Administration, finding Plaintiff normal, stable, with appropriate affect, and oriented in four spheres (Tr. 274-77). He had fair attention, scattered concentration, and demonstrated a good fund of information, comprehension, and thought content appropriate to mood and circumstance; White showed fair social judgment and some insight into his behavior. Tocci concluded that Plaintiff was functioning within the average range of intellectual ability. The Psychologist diagnosed pain disorder, assigned a GAF score of 70,[1] and indicated a fair progress for the Claimant. Tocci indicated that some of White's "responses

---

[1] A GAF score between 61 and 70 indicates "[s]ome symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *See* https://depts.washington.edu/washinst/Resources/CGAS/GAF%20Index.htm

4

appeared deliberately contrived and he tended to exaggerate the pain" (Tr. 276). In conclusion, the Psychologist stated that "[h]is issues appear to be orthopedic in nature and therefore his ability to work would need to be determined by a physician. Other than the experience of pain, he does not appear to have other mental health issues that would interfere with his ability to work" (Tr. 276).

On September 28, 2011, an x-ray noted "[d]egenerative changes [] present at multiple levels in the lumbar spine, involving the right sacroiliac joint" (Tr. 301).

White was seen on September 23 and November 18, 2011 at the Choctaw Urgent Care for complaints of left leg and longstanding, intermittent back pain that he rated at a level eight on a ten-point scale (Tr. 280-84). On the first exam, he experienced back stiffness and pain in his back bending laterally, forward, and in rotation; gait was normal and Plaintiff had the ability to change positions smoothly. There was no increased lumbar lordosis, though there was sacroiliac joint and paraspinal muscle tenderness. Uncontrolled, chronic back pain and hypertension were diagnosed; ordinary activity was recommended. Ultram[2] was prescribed. At the November examination, White stated that the medication was helping his pain; the attending

---

[2]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain." *Physician's Desk Reference* 2218 (54th ed. 2000).

5

doctor noted that his impairments were now controlled (Tr. 283).

On January 9, 2013, Psychologist Donald W. Blanton examined White for complaints of back, left shoulder, and left leg pain though he indicated he had anxiety and depression since his brother killed his mother (Tr. 287-92).  The Psychologist noted that thoughts and conversation were logical; associations were intact.  Affect was flat and appropriate and no confusion was noted; no psychomotor retardation was noted.  White was alert and oriented in four spheres; judgment was good for work and financial decision-making.  Blanton administered the Wechsler Adult Intelligence Scale, Fourth Edition (hereinafter *WAIS-IV*), on which Plaintiff scored a verbal IQ of 63, a perceptual reasoning IQ of 71, a working memory IQ of 69, a processing speed IQ of 74, and a full scale IQ score of 63; this was indicated to be in the mild range of mental retardation.  White also completed the Wide Range Achievement Test, Revised Third Edition, indicating a reading and spelling ability of second grade and math comprehension at the fourth-grade level.  Blanton did not administer the Minnesota Multiphasic Personality Inventory because of Plaintiff's "combination of [] poor intellect and poor reading ability" (Tr. 288).  The Beck Inventory indicated moderate depression.  The Psychologist indicated that the WAIS scores were a valid assessment of White's intellectual functioning, noting that the academic

achievement test found him functionally illiterate.  Blanton indicated that he demonstrated "deficits in adaptive functioning manifested prior to age 22 due to his mental retardation in the following areas:  communication, work, use of community resources, functional academic skills;" he assigned a GAF score of 50[3] (Tr. 288).  The Psychologist also completed a mental medical source opinion indicating that White was mildly limited in his ability to understand, remember, and carry out simple instructions, respond appropriately to customers, and use judgment in simple, one- or two-step work-related decisions; he was moderately limited in responding appropriately to supervision and co-workers, dealing with changes in his routine, maintaining attention, concentration or pace for two-hour periods, and maintaining daily activities; and was markedly limited in his ability to understand, remember, carry out, and use judgment in detailed or complex instructions and respond to customary work pressures (Tr. 291-92).  Blanton found that Plaintiff's personal habits and interests would mildly deteriorate, that White had been depressed for a year, that his pain was real, and that work stress would cause his condition to deteriorate; however, he could manage his own benefits.

---

[3]A GAF score between 41 and 50 indicates "[s]ome impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  *See* https://depts.washington.edu/washinst/Resources/CGAS/GAF%20Index.htm

7

On April 4, 2012, Dr. Katherine Hensleigh examined Plaintiff for complaints of back pain and nervousness, finding abdominal tenderness and lumbar muscle spasm with moderate pain on motion (Tr. 295-97).  Tramadol[4] was prescribed.

The ALJ faithfully summarized the evidence before him,[5] finding that White could perform specific light jobs; in reaching that decision, he weighted greatly the reports of Psychologist Tocci and Doctor Robidoux, credited the VE's testimony, and dismissed Blanton's opinions (Tr. 37-39).  The ALJ gave no credit to Plaintiff's testimony of pain and limitation (Tr. 36-37), a finding gone unchallenged (Doc. 14).  This concludes the Court's review of the evidence.

White first claims that he meets the requirements of Listing 12.05C (Doc. 14, pp. 2-5).  The introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2014).  Subsection C

---

[4]*Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time." *Physician's Desk Reference* 2520 (66th ed. 2012).

[5]The evidence at Tr. 302-27 was submitted to the Appeals Council on June 18, 2013, after the ALJ's determination was entered (Tr. 6).  As White raises no claim regarding that evidence (Doc. 14), it will not be summarized herein.

8

requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2014).

On the WAIS-IV, White scored a full scale IQ score of 63; the ALJ discounted the score, but considered his special education, his ability to live alone, maintain his financial affairs, and work at several different jobs consistently for most of his life, quitting only because the railroad closed (Tr. 35). He cited Psychologist Tocci's exam, noting White's own description of his daily activities and finding that Plaintiff functioned with average intelligence (Tr. 36). The ALJ cited Robidoux's physical exam, finding only hypertension (Tr. 37).

After considering these things, the ALJ found that White "does not have significant limitations in adaptive functioning" (Tr. 29). The Court agrees: the record evidence does not support a finding of disability based on 12.05C.

In reaching his determination, the ALJ discredited Blanton's conclusions as inconsistent with the other evidence; the Court finds substantial support for that conclusion. The ALJ further discounted Blanton's report as bought and paid for, on the advice of a lawyer, in search of a disability claim (*see* Tr. 37). The Court reminds Defendant that social security

9

regulations require White to provide evidence of impairment. 20 C.F.R. § 404.1545(a)(3).

In summary, the ALJ credited White's daily activities as demonstrating an ability to work and care for himself. As such, his assertion of lifelong mental retardation could not be supported.

The Court agrees with this conclusion. White has not demonstrated, in this medical record, that he suffers "deficits in adaptive behavior" in the present, much less that they became manifest before he was twenty-two. Plaintiff's claim otherwise is without merit.

White next alleges that the ALJ's RFC evaluation is flawed because it does not consider the combination of his impairments (Doc. 14, pp. 6-7). Plaintiff charges the ALJ with failing to properly represent his severe impairments of--depression, anxiety, chronic pain disorder, and inability to read—in either the RFC or his questions to the VE.

The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2013). That decision cannot be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

In the decision, the ALJ found Plaintiff's RFC to be as follows:

10

> [He] can perform light work as defined in 20 C.F.R. §§ 404.1567(b)[6] and 416.957(b) except with the following limitations: He is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. He can sit and stand for 6 hours in an 8-hour work day but would require a sit/stand option to relieve pain and discomfort. He can frequently climb ramps and stairs but never climb ladders or scaffolds. He is able to frequently balance, stoop, kneel, crouch, and crawl. He should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes, or operate a motor vehicle. He could occasionally operate non-dangerous moving mechanical parts and would be limited to understanding oral instructions and performing only routine and repetitive tasks. Any time off task by the claimant would be accommodated by normal workday breaks.

(Tr. 30).

The Court notes, initially, that "the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)C). The Eleventh Circuit Court of Appeals has noted

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

this instruction and further found that "[i]t is the duty of the [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In his findings, the ALJ lists White's impairments and concludes by saying that he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Appendix 1, Subpart P" (Tr. 29). Very similar language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4").

White has also argued that the ALJ ignored his depression, anxiety, chronic pain disorder, and inability to read in the RFC (Doc. 14, p. 7). The ALJ found that these impairments were not severe (Tr. 26-27).

In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984),

12

the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf.* 20 C.F.R. § 404.1521(a) (2004).[7]  The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Though White asserts that his depression, anxiety, chronic pain disorder, and inability to read are severe, he fails to point to evidence, under *Brady* or *McCruter*, demonstrating an inability to work because of them.  As such, they are not severe and the ALJ's consideration of them, under *Jones* has been satisfied.  The Court finds substantial support for the ALJ's RFC determination.[8]

Plaintiff's third claim is that the ALJ failed to complete

---

[7]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

[8]The Court also finds White's claim that the ALJ failed to present these impairments in proper hypotheticals to the VE meritless.

a PRTF in his analysis (Doc. 14, pp. 8-11).  Though the form itself was not appended, the Court finds that the ALJ set this information out in his determination:  White had no limitations in daily living activities or in concentration, persistence, or pace, and had never experienced an episode of decompensation; he had mild limitations in social functioning (Tr. 27).  The Court finds that the ALJ has properly incorporated the PRTF analysis required in *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) and met the obligations of 20 C.F.R. § 404.1520a.  White's claim that the unfiled form constitutes remand is without merit.

Finally, Plaintiff asserts that the ALJ relied on mistaken testimony from the VE.  Specifically, White points to the VE's characterization of his past work as a scaffold builder rather than construction worker (Doc. 14, pp. 9-11; cf. Tr. 37).

However, as pointed out by Defendant, this mistake, if in fact it is a mistake, is at most harmless because it was a characterization of previous work.  The ALJ found that Plaintiff could not do his past work and moved on to the fifth step of the evaluation analysis, finding specific light work jobs that he could do.  As such, the error is insignificant.

Petitioner also asserts that the VE's testimony is in error in that it conflicts with the Dictionary of Occupational Titles because that reference does not address whether occupations include a sit/stand option (Doc. 14, p. 10).  The Eleventh

14

Circuit Court of Appeals has specifically held "that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999), *cert. denied*, 529 U.S. 1089 (2000).  The *Jones* Court noted the DOT's acknowledgement that it was not a comprehensive source and should be supplemented with local job information.  *Id.*

Here, the ALJ offered a proper hypothetical question to the VE and questioned him as to the effect of a sit-stand opinion (Tr. 38, 75-79).  This Court has no reason to find the VE's testimony that White can perform the jobs of tagger, cloth folder, and inspector unsupported by substantial evidence.

White has raised many claims in this action that are all without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 9th day of March, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE
